**UNITED STATES of America**

v.

**Willie MITCHELL, Shelton Harris, Shelly Wayne Martin, and Shawn Gardner**

**No. CRIM AMD 04–0029.**

United States District Court, D. Maryland.

Dec. 19, 2005.

Robert Harding, Thomas M. Dibiagio, Office of the United States Attorney, Baltimore, MD, for United States of America.

Laura Kelsey Rhodes, Albright and Rhodes LLC, Rockville, MD, Timothy Joseph Sullivan, Law Offices of Timothy Sullivan, College Park, MD, Gerard P. Martin, Rosenberg Martin Funk Greenberg LLP, William Walter Kanwisher, Law Offices of William Kanwisher, Baltimore, MD, Adam Harris Kurland, Howard University School of Law, Barry Coburn, Trout Cacheris PLLC, Peggy Bennett, Coburn and Schertler LLP, Washington, DC, for Willie Mitchell, Shelton Harris, Shelly Wayne Martin, and Shawn Gardner.

**MEMORANDUM OPINION and ORDER**

DAVIS, District Judge.

The four defendants in this case, Willie Mitchell, Shelton Harris, Shelly Wayne Martin, and Shawn Gardner, have moved to dismiss all charges against them based on a lack of jurisdiction. Their individual but identical written pro se motions, the substance of which have been reiterated

orally numerous times during in-court proceedings, are hereby DENIED for the reasons stated herein.[1]

## I.

The defendants have been indicted by a properly constituted grand jury, and they are, indisputably, subject to the jurisdiction of this court. In particular, the grand jury has accused Mitchell, Harris, Martin, and Gardner of having participated in a criminal racketeering enterprise that began in the mid–1990s and continued up to their arrests in 2004. The group is alleged to have sustained itself through armed robberies, drug trafficking, and the establishment of a music production company called Shake Down Entertainment, Ltd. Each of the defendants is alleged to have willfully participated in one or more of five murders in and around Baltimore. If convicted on the capital counts, Mitchell, Harris and Gardner will face the possibility of the death penalty.

## II.

The defendants' challenge to jurisdiction is unusual—if not bizarre. The defendants claim that the court does not have jurisdiction "for lack of verified complaint."[2] They also state that the court "lacks subject matter jurisdiction over the Res and lacks subject matter jurisdiction over the Rem."[3] The motions, dated November 8, 2005, are supported by sources of law that are not ordinarily associated with challenges to criminal jurisdiction, including the Uniform Commercial Code and the Federal Rules of Civil Procedure.

### A.

The exact theory relied on by the defendants is difficult to ascertain, but it seems to be related to their common statements insisting that, "I do not consent. I did not sign anything. And I do not understand the attached documents [the front page of the Second Superceding Indictment]." The defendants also persistently claim that they are not properly identified in the caption of the indictments because their names are printed in all capital letters, thereby failing to properly represent them as "flesh and blood" men.[4]

1. The defendants have raised other objections that have been noted by the court, including a challenge to the ability of their court-appointed lawyers to represent them. This memorandum, however, only concerns the court's jurisdiction.

2. Each defendant, in a pro se filing described as "Affidavit of Status and Notice of Dismissal of Charges Attached to as Incorporated Herein," states the following: "Your Affiant challenges the subject matter jurisdiction of the Court for lack of verified complaint and lack of Verified complaint Sworn under oath, and the fact that he does NOT understand any of the charges."

3. This assertion comes from another pro se filing called "Refusal for Fraud."

4. The defendants' protestations echo the sentiments included in the following excerpt from an essay found on an Internet website:

   There appears to be general misunderstanding by people in general as to the difference between a natural person and an artificial person. This document will explain that difference.

   John Joseph Smith, is a natural, flesh and blood, person, created by God. JOHN JOSEPH SMITH, is a U.S. corporate artificial person, U.S. citizen, created by the government. In basic English grammar, a name spelled in upper and lower case, such as John Joseph Smith, is indicative of a flesh and blood man, a natural person .... On the other hand, a name spelled in all caps, such as JOHN JOSEPH SMITH, is indicative of an artificial person.

   *See* http://www.usa-t he-republic.com/ revenue/true_ history/AffTruth.html (visited December 16, 2005).

■ These arguments are patently without merit. Perhaps they would even be humorous—were the stakes not so high. To begin with, the U.C.C. has no bearing on criminal subject matter jurisdiction. In crossing out the front page of their indictments, the defendants cite "U.C.C. 3.501." The court takes this to mean U.C.C. § 3–501. This section of the Uniform Commercial Code, however, pertains to presentment of negotiable instruments. It is unfathomable how such a provision has any relevance in a criminal proceeding.

The defendants also cite Rule 12(h)(3) of the Federal Rules of Civil Procedure. Again, this has nothing to do with the instant case. Although the rule does pertain to courts dismissing actions for lack of jurisdiction of the subject matter, the rule applies only to civil actions. This is a criminal action.

■ Furthermore, the defendants, who, prior to November 8, 2005, acted with appropriate dignity at all times while in court and cooperated fully with their counsel, apparently recognizing the authority of this court, are mistaken if they think they cannot be prosecuted without their consent or signatures.[5] If this were the case, it is hard to imagine that any indicted defendant would "consent" to any proceedings against him, and the entire federal criminal code would be pointless. The court can only speculate as to the motivations behind the defendants' recent actions, but it seems that the defendants are confusing criminal procedure with the requirement in civil cases that the defendant be properly served with process.

■ Finally, the use of capital letters in the caption of an indictment is irrelevant to the issue of subject matter jurisdiction. The government attorneys and the court have addressed the defendants, both in court and on paper, in a proper manner that clearly identifies them. "It makes no sense to rest a jurisdictional distinction upon the use of all upper case letters or a mixture of upper and lower case letters. The federal courts abandoned this level of formalism long ago." *United States v. Singleton,* 2004 WL 1102322, *3 (N.D.Ill. May 7, 2004)(denying motion to dismiss for lack of jurisdiction based on argument, in part, that defendant was "a flesh and blood man").

B.

Although unique by conventional legal standards, the defendants arguments are not new. Increasingly, they have been asserted in criminal cases pending in this district, and have been summarily rejected. Similar challenges have been advanced in other districts as well, but the results have been the same. In *Singleton,* for example, the defendant argued first that the capitalization of his name referred not to a flesh and blood man, but to a treasury account the government had set up for each citizen in the 1930s. *Id.* at *2. Second, the defendant argued that Congress had illegally adjourned without a quorum in 1861, thereby invalidating every law passed since then. *Id.* The court rejected these assertions. *See also United States v. Secretary of Kansas,* 2003 WL 22472226 (D.Kan. Oct. 30, 2003) (criminal defendant who filed a lien against property

---

5. The defendants also state that they "do not understand" the proceedings. The court does not, however, take this to mean that the defendants lack an understanding of the charges, or that they are arguing they are incompetent to stand trial. To the contrary, before they launched their recent, misguided attack on the court's jurisdiction, each defendant cooperated fully with their counsel through several pre-trial motions hearings and never suggested that they lacked understanding of the charges, the potential penalties, or the very gravity of this case.

owned by a federal judge sought dismissal of injunctive action filed by the United States on the ground, in part, that he was a "flesh and blood man with a soul").

These assertions are equally unimpressive as invoked in the instant case. This court clearly has jurisdiction over the defendants and over the criminal charges contained in the indictment. By statute, federal district courts "have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. The defendants are all charged with crimes that were established by acts of Congress, including racketeering under 18 U.S.C. § 1962 and drug offenses under 21 U.S.C. § 841. They were indicted by a properly assembled federal grand jury. Now they must stand trial in federal court.

## III.

It is not likely that the defendants in this case, charged with, but presumed innocent of, involvement in the urban violence that all too commonly attends the modern drug trade, know of the origins of their in-court tirades and irrational written objections based on "jurisdiction." But courts have encountered these claims before, namely, in the antics and writings of extremists who wish to dissociate themselves from the social compact undergirding this nation's democratic institutions, including the independent judicial branch of government. *See* THE ANTI-GOVERNMENT MOVEMENT GUIDEBOOK, National Center for State Courts (1999), downloadable at *http://www.ticket slayer.com/beta _ts_ 2/anti-gov_ handbook.pdf* and by purchase from the National Center for State Courts at *http://library.ncsc. dni.us/uhtbin/cgisir si.exe*. There, the authors have described activities and arguments made by others not unlike those employed by the defendants in this case:

Though the precise contours of their philosophy differ among the various groups, almost all antigovernment movements adhere to a theory of a "sovereign" citizen. Essentially, they believe that our nation is made up of two types of people: those who are sovereign citizens by virtue of Article IV of the Constitution, and those who are "corporate" or "14th Amendment" citizens by virtue of the ratification of the 14th Amendment. The arguments put forth by these groups are generally incoherent, legally, and vary greatly among different groups and different speakers within those groups. They all rely on snippets of 19th Century court opinions taken out of context, definitions from obsolete legal dictionaries and treatises, and misplaced interpretations of original intent. One of the more cogentin the sense that it is readily followed-arguments is that there were no United States citizens prior to the ratification . of the 14th Amendment. All Americans were merely citizens of their own state and owed no allegiance to the federal government. As a result of that amendment, however, Congress created a new type of citizen-one who now enjoyed privileges conferred by the federal government and in turn answered to that government.

One of the ramifications of this belief is the dependent belief that, unless one specifically renounces his federal citizenship, he is not the type of citizen originally contemplated by the Constitution. And, in their view, the Constitution requires all federal office holders to be the original or sovereign type of citizen, a state citizen rather than a United States citizen. As a result, all federal officers are holding office illegally and their laws and rules are thus constitutionally suspect.

*Id.* at 51. It is truly ironic that four African–American defendants here apparently rely on an ideology derived from a famously discredited notion: the illegitimacy of the Fourteenth Amendment.

The NCSC monograph further describes some of the ideas behind jurisdictional challenges to the proper exercise of judicial authority as follows:

> Members of the anti-government movement will often attempt to avoid conferral of jurisdiction onto a court by refusing to identify themselves or denying that they are the person named in a warrant or summons. This refusal may come from any one of or even several of the following bases. Often, antigovernment adherents will refuse to come forward simply to waste time, or out of a more general refusal to recognize or submit to the court's jurisdiction. Some parts of the anti-government movement however, will refuse to come forward on the ground that their name is misspelled, or even because their name is in all capital letters. This particular objection comes from a number of "sources". Some believe that the spelling (or misspelling, or use of all capital letters) of their name is a sign of the movement toward "one world government." Others believe that all capital letters denotes a corporation, and that answering as a corporation subjects them to the illegitimate laws of the American judicial system. Some believe that all capital letters denotes "the Mark of the Beast,"

or that it is a denotation of a "war name."

> Finally, some members of the movement believe that they only "own" their first and middle names, and that their last name reveals their family. They use their middle name in place of a last name, or go by their first and middle name from the family of their last name. Attached to this particular issue may be a desire to be referred to as "Sir" or "Sovereign," because of a belief that this title more effectively conveys their status as a "sovereign citizen." It is the belief of members of the movement that they can file a document renouncing their citizenship to become a nation subject only to their own local common-law, and not subject to the law of their state or the federal government. Another ground for a follower's refusal to identify himself may be his refusal to recognize himself as a "person." This particular objection comes from what appears to be a somewhat mystical distinction between a "person" and a "human being" according to the anti-government movement's philosophy.

*Id.* at 63.

Bizarre and misguided contentions by defendants in criminal cases have never proven effective and they will not prove effective in this capital case. Defendants are urged here, as they have been urged *viva voce* in open court, and in the strongest possible terms, to desist from their disruptive behavior and resume cooperation with their counsel, *who want desperately to save their lives.*[6]

---

**6.** Indeed, the defendants' repeated assertions that they lack confidence that their appointed counsel can adequately represent them is especially misguided. The court has appointed two highly competent and experienced attorneys for each defendant, as required in capital cases by federal law. *See* 18 U.S.C. § 3005. It would be especially tragic if, in the end, one or more of these young men were to receive a death sentence, in part, because he acted willfully to thwart the very efforts of his lawyers to obtain a not guilty verdict and/or to save his life even if he is convicted. *If the defendants continue on the course they have now chosen, of continued disruptive behavior in the courtroom (which will require their removal from the courtroom during pre-trial and trial proceedings) and of*

## IV.

For the reasons set forth above, the defendants' motions to dismiss for lack of jurisdiction are this 19th day of December, 2005, DENIED.

**THE CLERK SHALL MAIL A COPY OF THIS MEMORANDUM OPINION AND ORDER TO ALL COUNSEL AND TO EACH OF THE DEFENDANTS, PRO SE.**

*continued attacks on their lawyers and refusals to cooperate with counsel, the possibility of such an outcome will grow increasingly more* *likely.* Surely, no matter what they may feel about this case, their own families and loved ones cannot possibly desire such a result.