**UNITED STATES of America**

v.

**Shawn GARDNER**

**No. CRIM. AMD 04–0029.**

United States District Court,
D. Maryland.

March 2, 2006.

Laura Kelsey Rhodes, Albright and Rhodes LLC, Rockville, MD, Timothy Joseph Sullivan, Law Offices of Timothy Sullivan, College Park, MD, for Willie Mitchell, also known as Bo.

William Walter Kanwisher, Law Offices of William Kanwisher Baltimore, MD, for Shelton Harris, also known as Little Rock.

Gerard P. Martin, Rosenberg Martin Funk Greenberg LLP, Baltimore, MD, for Willie Mitchell, also known as Bo, Shelton Harris, also known as Little Rock.

Adam Harris Kurland, Washington, DC, Barry Coburn, Trout Cacheris PLLC, Peggy Bennett, Coburn and Schertler LLP, Washington, DC, for Shawn Gardner, also known as Goo.

Robert Harding, Office of the United States Attorney, Baltimore, MD, Thomas M. Dibiagio, Baltimore, MD, for USA.

## MEMORANDUM OPINION
## and ORDER

ANDRE M. DAVIS, District Judge.

Defendant Shawn Gardner is charged with numerous offenses stemming from his alleged involvement in a criminal racketeering enterprise. *See* Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.* Now before the court are two motions. First, Gardner moves to dismiss Counts 7 and 9 of the second superseding indictment for being multiplicitous in violation of the Double Jeopardy Clause of the Fifth Amendment. Second, the attorneys for Gardner, Adam

Kurland, Esq., and Barry Coburn, Esq., move to withdraw from their representation of Gardner. For the reasons explained below, the motion to dismiss shall be granted.[1] The motion for leave to withdraw as counsel shall be denied.

## I.

The 20–count second superceding indictment charges Gardner and three codefendants with conspiracy to participate in a criminal racketeering enterprise, and related offenses, beginning in the mid–1990s and continuing up to their arrests in 2004. The group, referred to in the second superceding indictment as the "Mitchell Organization" after its alleged leader, defendant Willie Mitchell, is described as a "RICO enterprise" that sustained itself through acts of murder, armed robbery, drug trafficking, and the establishment and operation of a music production company known as Shake Down Entertainment, Ltd. Each of the defendants is alleged to have willfully participated in one or more murders in and around Baltimore City. Gardner is alleged to have participated in the murders of Darryl Wyche, Anthony Wyche, and Tanya Jones–Spence (as well as a conspiracy to murder Darius Spence).[2] Three of the four defendants, including Gardner, face the possibility of the death penalty. *See United States v. Mitchell,* 405 F.Supp.2d 602 (D.Md.2005).

For various reasons, the defendants have been severed for trial, and the case against Gardner is calendared for trial beginning in April 2006.

The pretrial proceedings in this case have taken an unusual turn, which wholly accounts for the motion for leave to withdraw submitted by Gardner's attorneys. Gardner and his co-defendants have refused to recognize the subject matter jurisdiction of this court. *See id.* (denying defendants' pro se motions to dismiss for lack of jurisdiction). They have also refused to cooperate with their court-appointed lawyers. *See id.* at 606 n. 6. On numerous occasions, I have ordered that the defendants, including Gardner, be removed from the courtroom during pre-trial hearings in response to their disruptive behavior. Nevertheless, the court remains determined to move forward in the resolution of this case.

## II.

■ For purposes of the motion to dismiss, only two of the charges against Gardner are relevant: racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (charged in Count 1, "the RICO conspiracy charge"), and conspiracy to commit murder in aid of racketeering activity in violation of 18 U.S.C. § 1959(a) (charged separately in Counts 7 and 9, "the VICAR conspiracy charges").[3] Gardner argues

---

**1.** I am cognizant that, when an indictment is found to be multiplicitous, the Government may decide how to cure the defect. *See United States v. Nakashian,* 820 F.2d 549, 550 (2d Cir.1987) (equating dismissal of an indictment count with "an order compelling an election between counts"). Nevertheless, I am equally certain that the Government would elect to dismiss Counts 7 and 9, which carry a maximum penalty of 10 years each, rather than Count 1, the centerpiece of this prosecution, which carries a maximum penalty of life in prison.

**2.** Gardner has already been convicted in state court for the murder of Tanya Jones–Spence (racketeering act six), and is serving a sentence of life without parole in state prison. Apparently, he is appealing that conviction.

**3.** Section 1959 of Title 18, United States Code, is entitled "Violent crimes in aid of racketeering activity," and provides as follows:

(a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racke-

that these distinct conspiracy charges, given the statutory scheme crafted by Congress and in light of the allegations of the second superceding indictment, are multiplicitous, and therefore, the VICAR conspiracy charges should be dismissed. So far as I can determine, this is an issue of first impression in the federal courts.[4]

> teering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished—
> (1) for murder, by death or life imprisonment, or a fine under this title, or both; and for kidnapping, by imprisonment for any term of years or for life, or a fine under this title, or both;
> (2) for maiming, by imprisonment for not more than thirty years or a fine under this title, or both;
> (3) for assault with a dangerous weapon or assault resulting in serious bodily injury, by imprisonment for not more than twenty years or a fine under this title, or both;
> (4) for threatening to commit a crime of violence, by imprisonment for not more than five years or a fine under this title, or both;
> (5) for attempting or conspiring to commit murder or kidnapping, by imprisonment for not more than ten years or a fine under this title, or both; and
> (6) for attempting or conspiring to commit a crime involving maiming, assault with a dangerous weapon, or assault resulting in serious bodily injury, by imprisonment for not more than three years or a fine of [sic] under this title, or both.
> (b) As used in this section—
> (1) "racketeering activity" has the meaning set forth in section 1961 of this title; and
> (2) "enterprise" includes any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce.
> 18 U.S.C. § 1959(a), (b). Gardner is charged in Counts 7 and 9 with separate conspiracy-to-murder offenses punishable under sub-section (a)(5). As described in the text, the conspiracy-to-murder offenses charged under § 1959(a) are, in each instance, *a part of but not the entirety of* (i.e., conspiracy to murder the victims, but not the actual murder of the victims) two of the 12 predicate acts alleged in support of Count 1, the RICO conspiracy charge. *See infra* n.9 (explaining that the Government lists nine racketeering acts in Count 1 of the second superceding indictment when it really enumerates 12 racketeering acts). Furthermore, I am mindful, of course, that the murder conspiracy charges mentioned in Count 1 as predicate acts of racketeering activity are *state law conspiracies*, while the overall RICO conspiracy charge alleged in Count 1, and the VICAR conspiracy charges alleged in Counts 7 and 9, are *federal law conspiracies*.

4. To be sure, the inclusion of a RICO conspiracy charge and one or more closely related VICAR conspiracy charges in a single indictment is not unprecedented. At a January 26, 2006, pre-trial hearing, for example, the Government submitted four such cases in support of its opposition to Gardner's motion to dismiss. Most prominently, the Government referred the court to *United States v. Nascimento*, 2005 WL 3277660 (D.Mass. Dec.2, 2005), to show that the two charges are not multiplicitous. However, the defendant in that case never challenged the joinder of conspiracy charges under both § 1962(d) and § 1959(a) based on the Double Jeopardy Clause. Rather, Nascimento argued (1) that the *substantive* RICO offense, § 1962(c), and the VICAR conspiracy offense, § 1959(a), were multiplicitous, and (2) that § 1962(c) was multiplicitous with § 1962(d). The court's ruling, therefore, pertained only to those challenges. The Government submitted three other cases: *Vega v. United States*, 2005 WL 1124512 (E.D.N.Y. May 10, 2005); *United States v. Chan*, 901 F.Supp. 480 (D.Mass. 1995); and *United States v. Carrillo*, 229 F.3d 177 (2d Cir.2000). Although the indictments in each of those cases contained the two charges that are at the center of the dispute in the instant case, none of the decisions concerns the issue of multiplicity.

### A.

█ The Double Jeopardy Clause states that "no person ... shall ... be subject for the same offense to be twice put in jeopardy." U.S. CONST. AMEND. V. The prohibition on multiplicity in an indictment is within the core protections of the Double Jeopardy Clause, and specifically, bars the charging of a single offense in more than one indictment count. *United States v. Colton*, 231 F.3d 890, 908 (4th Cir.2000); *United States v. Goodine*, 400 F.3d 202, 207 (4th Cir.2005) ("[T]he signal danger of a multiplicitous indictment is that a defendant might thereby receive multiple punishments for the same crime.") (internal quotation omitted).

█ In determining whether an indictment is multiplicitous, a court's inquiry must divine Congressional intent. *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). Such an inquiry can be completed through a three-step analysis. First, if the offenses arise under different statutes and each statute unambiguously authorizes punishment, it may be inferred that Congress intended to authorize punishment under each provision. Second, it must be determined, through the test established in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), whether the statutes are sufficiently distinguishable from each other so that it is reasonable to infer that Congress intended multiple punishments. Finally, a court must test the preliminary conclusion that multiple punishments are authorized against the legislative history of the statutes to see whether there exists a contrary Congressional intent. *Id.* at 336–42, 101 S.Ct. 1137; *United States v. Nakashian*, 820 F.2d 549, 551 (2d Cir.), *cert. denied*, 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 392 (1987).

█ The crux of this inquiry is the double jeopardy analysis crafted in *Blockbur-*

*ger*, which requires the court to determine "whether each provision requires proof of an additional fact which the other does not." 284 U.S. at 304, 52 S.Ct. 180; *Goodine*, 400 F.3d at 207. Like the overall *Albernaz* inquiry, the *Blockburger* test has as its ultimate purpose the determination of Congressional intent. *See Rutledge v. United States*, 517 U.S. 292, 303, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996); *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *United States v. Teplin*, 775 F.2d 1261, 1265 (4th Cir.1985) ("The key to determining whether certain counts are multiplicitous ... is whether Congress intended to authorize cumulative punishment for the same or similar conduct.").

I find that the offenses in question pass the first step of the above-described inquiry because they are enumerated in separate statutes with each statute explicitly authorizing a punishment. Nevertheless, as explained within, I find that the offenses fail the *Blockburger* test and, under the third part of the inquiry, I am confident that Congress did not intend to authorize multiple punishments for the disputed conspiracy offenses under the circumstances of this case. Therefore, I conclude that Counts 7 and 9 of the second superceding indictment are multiplicitous with Count 1, and they shall be dismissed.

### B.

█ Because the first inquiry under *Albernaz* requires no elaboration, I begin this analysis with the *Blockburger* test. Under *Blockburger*, a court must first determine the elements of the crimes for which the defendant has been indicted, then compare the elements. *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180.

■ Under a traditional *Blockburger* analysis, the court determines and compares the elements of the charged offenses based on the face of the statutes. However, there are times when this rigid approach does not work. In particular, this approach is inadequate when applied to conspiracies and when applied to offenses that have alternative elements. Such is the nature of the instant case, in which each of two conspiracy offenses must be evaluated against the other, and one of them (the racketeering conspiracy) can be established beyond a reasonable doubt through proof of any number of alternative predicate acts. In such instances, the Supreme Court has acknowledged that a modified approach is warranted.[5]

That alternative approach was employed in *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), in which the Court considered whether a defendant could be sentenced consecutively under District of Columbia law for rape and for the felony murder that resulted from the same rape. Under a facial *Blockburger* test, the offenses were different because: (1) rape was not required for felony murder, and (2) a killing was not required for rape. *See id.* at 694, 100 S.Ct. 1432 (outlining the Government's argument). However, the Court tailored its analysis to the specific charges in the case, explaining:

*In the present case,* however, proof of rape is a necessary element of proof of the felony murder, and we are unpersuaded that this case should be treated differently from other cases in which one criminal offense requires proof of every element of another offense. There would be no question in this regard if Congress, instead of listing the six lesser included offenses in the alternative, had separately proscribed the six different species of felony murder under six statutory provisions. It is doubtful that Congress could have imagined that so formal a difference in drafting had any practical significance, and we ascribe none to it.

*Id.* at 694, 100 S.Ct. 1432 (emphasis added). Thus, by examining the specific allegations of the indictment, the Court found that Congress did not authorize consecutive sentences for rape and a killing committed in the course of rape. *Id.* at 693, 100 S.Ct. 1432.

Numerous courts have followed the reasoning of *Whalen* in their multiplicity analyses. Hampered by the inflexibility of the *Blockburger* approach, these courts have looked beyond the literal words of the relevant statutes to consider the facts alleged in the indictment (or presented at trial) when evaluating the elements of two offenses in measuring Congressional in-

**5.** Yet another approach to the predicament identified in text has been applied in *successive prosecutions* of conspiracy charges. "It has long been understood that separate statutory crimes need not be identical either in constituent elements or in actual proof in order to be the same within the meaning of the constitutional prohibition." *Brown v. Ohio*, 432 U.S. 161, 164, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). In the Fourth Circuit, a court considering a double jeopardy challenge in a successive prosecution for conspiracy may conduct a more probing and accurate analysis by using a "totality of the circumstances" or "full study of the indictments and

evidence" test. *United States v. MacDougall*, 790 F.2d 1135, 1144 (4th Cir.1986) (quoting *United States v. Thomas*, 759 F.2d 659, 662 (8th Cir.1985)); *United States v. Ragins*, 840 F.2d 1184, 1188–89 (4th Cir.1988). Although courts making such an inquiry have employed a five-factor analysis, *MacDougall* preferred "a flexible application of the test rather than rigid adherence." *Id.* This approach certainly has merit, and in some ways parallels the approach I take here. However, I will not apply it here because the instant controversy does not involve a double jeopardy challenge to a *successive prosecution.*

tent. Most prominently, two months after deciding *Whalen,* the Supreme Court employed a similar analysis in *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), in which the Court again looked at the facts underlying the two charges—one for failing to reduce speed to avoid an accident, the other for manslaughter by automobile—to see if they were the "same offense" for double jeopardy purposes. *See Pandelli v. United States,* 635 F.2d 533, 536 (6th Cir.1980) (*"Whalen* and *Vitale* make clear, however, that the requisite statutory elements must be examined from the vantage point of the particular case before the court"); *United States v. Kragness,* 830 F.2d 842, 863–64 (8th Cir.1987) (employing the reasoning of *Whalen* to find that a RICO conspiracy charge and a non-RICO drug-conspiracy charge were the same under *Blockburger* despite facial differences in the statutes, but concluding, nonetheless, that Congress intended to authorize multiple punishments because the drug conspiracy is an underlying predicate offense); *United States v. Seda,* 978 F.2d 779, 781 (2d. Cir.1992) (acknowledging that the "Supreme Court has recognized that the rigid 'look-only-at-the-statute' approach is inappropriate in some cases where one of the statutes covers a broad range of conduct"); *United States v. Barton,* 647 F.2d 224, 234–38 (2d Cir.1981), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981) (looking to the facts in the indictment to find the general conspiracy statute, 18 U.S.C. § 371, and the RICO conspiracy statute, 18 U.S.C.1962(d), to be nonmultiplicitous); *United States v. Peacock,* 761 F.2d 1313, 1319 (9th Cir.1985) (finding two conspiracy counts multiplicitous and, in the process, stating, "of course, each case depends on its facts"); *United States v. Rogers,* 898 F.Supp. 219, 222 (S.D.N.Y.1995) ("It seems clear in light of *Whalen* that the Court is not restricted to the statutes in all

cases." (citations omitted)); *United States v. Mathis,* 1997 WL 683648 at *8 (S.D.Ohio, June 2, 1997) (following *Whalen* and *Seda* and stating that "the Court may properly look to the facts alleged in the Indictment"); *cf. Nakashian,* 820 F.2d at 552 n. 7 (stating that "it is not clear whether courts even have the authority to [consider how statutes are applied in the indictment] under *Blockburger* ").

▮ All told, courts have some latitude when comparing elements of charges for double jeopardy purposes. "What the reviewing court must do now in applying *Blockburger* is go further and look to the legal theory of the case or the elements of the specific criminal cause of action for which the defendant was convicted." *Pandelli,* 635 F.2d at 538. In other words, a facial statutory distinction is not invariably dispositive for purposes of a *Blockburger* analysis; the court may have to look beyond the text of the statute.

I find the approach taken by *Whalen* and its progeny to be the most appropriate method of analyzing the instant double jeopardy challenge, in which the defendant argues that Counts 7 and 9 are multiplicitous with Count 1. Therefore, when considering the elements of each offense, and when assessing each against the other, I will, when necessary, supplement the statutory elements of each offense with the specific allegations set forth in the second superceding indictment. I begin this process by determining the elements of each offense.

▮ Although pattern jury instructions are sometimes helpful in such an undertaking, it is preferable to look to case law. *See United States v. Adkinson,* 392 F.Supp.2d 1378, 1381 (M.D.Ga.2005) ("The Pattern Jury Instructions are not binding, even though the Court generally considers them a valuable resource, reflecting the

collective research of a panel of distinguished judges."). In its unpublished opinion in *United States v. Abed*, 2000 WL 14190 (4th Cir. Jan. 10, 2000), the Fourth Circuit considered the issue of what elements comprise a violation of the RICO conspiracy statute. Although the opinion was unpublished, the pertinent excerpt was quoted approvingly from an opinion of the Fifth Circuit, and I find the reasoning to be sound. In a § 1962(d) RICO conspiracy prosecution, therefore, the Government must prove the following elements: "(1) that two or more people agreed to commit a substantive RICO offense [i.e., as applicable here, § 1962(c)] and (2) that the defendant knew of and agreed to the overall objective of the RICO offense [i.e., as applicable here, that Gardner knowingly joined a conspiracy with the intent to advance the Mitchell Organization's goals of conducting its affairs through a pattern of racketeering activity]." *Id.* 2000 WL 14190 at *10 (quoting *United States v. Posada–Rios*, 158 F.3d 832, 857 (5th Cir. 1998), *cert. denied*, 526 U.S. 1137, 119 S.Ct. 1792, 143 L.Ed.2d 1019 (1999)).

■ As further elaboration on the bare text of the RICO conspiracy statute, the Supreme Court has held that under § 1962(d), the Government (1) does not have to prove that the defendant himself committed an overt act, and (2) does not have to prove that the defendant conspired to personally commit two predicate acts. *Salinas v. United States*, 522 U.S. 52, 64–66, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997). Rather, to sustain a conviction, the evidence need show no more than that the defendant knew before or during his membership in the RICO conspiracy that someone else in the conspiracy would commit at least two racketeering acts. *Id.* These are the elemental standards that shall be applied for purposes of the ensuing *Blockburger* analysis.

The second superceding indictment also charges Gardner twice with conspiracy to commit murder (as defined under Maryland law) in aid of racketeering activity. 18 U.S.C. § 1959(a).[6] In Count 7 he is charged with conspiracy to murder the Wyche brothers; in Count 9 he is charged with conspiracy to murder Darius Spence.

The elements of a § 1959(a) substantive offense were carefully laid out in the leading case of *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir.1992), as follows: "(1) that the Organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise." *Id.* The elements of a general conspiracy offense are: (1) two or more persons entered the unlawful agreement charged in the indictment; (2) the defendant knowingly and willingly became a member of the conspiracy; (3) one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the indictment; and (4) the overt act was committed to further some objective of the conspiracy. Sand & Siffert, *Modern Federal Jury Instructions*, No. 19-3.[7]

**6.** Gardner is also charged in Counts 5 and 6 with two substantive offenses under § 1959(a): the actual murders, respectively, of Darryl and Anthony Wyche, as violent crimes in aid of racketeering activity. Recognizing the well-settled principle that an indictment charging conspiracy to commit an offense and commission of the substantive offense does not raise double jeopardy or multiplicity concerns, Gardner does not challenge the presence of Counts 5 and 6 in the second superceding indictment.

**7.** Just as there is no distinct "overt act" requirement for proof of a defendant's partic-

By tailoring the general conspiracy elements to fit the VICAR conspiracy offense, I find that in order to convict Gardner of the conspiracy violations under § 1959(a), the Government must prove the following elements: (1) that the "Mitchell Organization" was a RICO enterprise; (2) that the enterprise was engaged in racketeering activity as defined in the RICO statute; (3) that Gardner had a position in the "Mitchell Organization;" (4) that two or more persons entered into an agreement to murder the named victims, as charged in Counts 7 and 9 of the second superceding indictment; (5) that Gardner knowingly and willingly became a member of the conspiracy; and (6) that Gardner became a member of the conspiracy for the purpose of gaining entrance to, maintaining, or increasing his position in the "Mitchell Organization," which is to say, more broadly, that he acted "in furtherance of that membership." *Concepcion,* 983 F.2d at 381.

## C.

Having identified the elements of the two conspiracy charges that Gardner alleges are multiplicitous, I now turn my attention to a comparison of those elements. As the Government urges, there are at least two possible distinctions between the elements of the conspiracy offenses that merit consideration. One is based on the "purpose" requirement of the VICAR conspiracy; the other is based on the multiple underlying "racketeering acts" that are the basis for the RICO conspiracy. These considerations are not wholly unrelated, but I nonetheless consider each in turn. I will also consider a third possible difference—the distinguishing RICO conspiracy requirement that the defendant be aware

that a co-conspirator will commit at least two racketeering acts.

### 1.

First, I will consider whether the "purpose" feature of § 1959(a) is sufficiently distinct such that, under the circumstances here, a § 1959(a) conspiracy charge can be laid in the same indictment as a § 1962(d) conspiracy charge without rendering the second superceding indictment multiplicitous. As Gardner readily admits, the § 1959(a) requirement that the defendant conspire "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity" is at least facially absent from the elements of a § 1962(d) RICO conspiracy. Nevertheless, there is a corresponding element critical to proof of the RICO conspiracy: that the defendant "knew of and agreed to the overall objective of the RICO offense." *Abed,* 2000 WL 14190, at *10. Despite this facial difference, I find that, given the facts alleged in the second superceding indictment in this case, it must be concluded that the "overall objective" element necessary to prove the RICO conspiracy offense under § 1962(d), and the "purpose" element necessary to prove the VICAR conspiracies under § 1959(a), do not sufficiently distinguish two conspiracy offenses for purposes of a *Blockburger* analysis.

 To begin with, the purpose element of the VICAR statute has been construed broadly in the Fourth Circuit, as elsewhere. "We consider the motive requirement satisfied if the jury could properly infer that the defendant committed his violent crime [i.e., *joined the conspiracy to commit murder*] because he knew it was expected of him by reason of his member-

---

ipation in a RICO conspiracy, there is no distinct "overt act" requirement for proof of a defendant's participation in a VICAR conspir-

acy. *United States v. Orena,* 32 F.3d 704, 714 (2d Cir.1994).

ship in the enterprise or that he committed it [i.e., *joined the conspiracy to commit murder*] in furtherance of that membership." *United States v. Fiel,* 35 F.3d 997, 1004 (4th Cir.1994) (quoting *Concepcion,* 983 F.2d at 381); *accord United States v. Johnson,* 219 F.3d 349, 359 (4th Cir.2000). It is clear under the allegations of the second superceding indictment that if Gardner's alleged act of joining the VICAR conspiracy was "in furtherance of [his] membership [in the RICO enterprise]," then Gardner certainly "knew of and agreed to the overall objective of the RICO offense"—to rob people, to kill people, to traffic in illegal narcotics under the aegis of the "Mitchell Organization," and to make agreements with those who were also members of or associated with the "Mitchell Organization."[8]

 Notably, the unique dimension of the § 1959(a) purpose requirement need not predominate the general motive of the defendant. *United States v. Tse,* 135 F.3d 200, 206 (1st Cir.1998). "Nowhere does the statute or its legislative history indicate that the government must prove that the crime was *solely* motivated by a desire to maintain or increase a particular position within the enterprise." *Id.* (emphasis added). The case law makes it plain that the judicial gloss placed on the "purpose" element of the VICAR conspiracy offense sweeps within its compass a broader range of intentionality and purposefulness than that borne by a plain reading of the statute.

In the instant case, when considering the facts alleged in the second superceding indictment, it is clear that the purpose element of the VICAR conspiracy charges under § 1959(a) dovetails with the § 1962(d) element that the defendant agree to the overall objective of the racketeering conspiracy. Here, the Government alleges that Gardner was an integral "member" of the "Mitchell Organization." Second Superceding Indictment, ¶ 1. It is logical to infer that his purpose, manifested by his alleged role in the organization, was to further the goals of the organization. (Indeed, it would be illogical to refuse that inference.) If he joined a conspiracy within the framework of the "Mitchell Organization" to murder a particular person, he did so not only for personal gain, but for the gain of the "Mitchell Organization."

I am persuaded that the only reasonable way to split these purposes consonant with double jeopardy doctrine and in light of the expansive judicial interpretation of the VICAR purpose element would be to suppose that Gardner joined the VICAR murder conspiracy for personal gain within the "Mitchell Organization"—for example, to be promoted—but that the VICAR murder conspiracy itself deviated in some discernable manner from the "overall objective" of the RICO enterprise. Although this theory would satisfy the *Blockburger* "separate offenses" analysis, it cannot plausibly be derived from the second superceding indictment. The reason for this is that the state-law variants of the murder conspiracies in Counts 7 and 9 are listed in Count 1 as predicate racketeering acts of the RICO enterprise itself, and one of the very "pur-

---

**8.** The second superceding indictment describes the "Purposes of the Mitchell Organization," in pertinent part, as follows: "Enriching the members ... of the [Mitchell Organization] through, among other things, murder, armed robbery ... and distribution of controlled substances;" and further, "Preserving and protecting the power, territory and profits of the [Mitchell Organization] and retaliating against other individuals and organizations through the use of ... violence, threats of violence [and] murder;" and further, "Promoting and enhancing the [Mitchell Organization] and its members' ... activities." Second Superceding Indictment, ¶¶ 4(a), (b), and (c).

poses" of the "Mitchell Organization" was to do exactly what Gardner is alleged to have done. In other words, murdering and conspiring to commit murder were the very modes of operation—and in some sense the heart and soul—of how the "Mitchell Organization" allegedly conducted its "affairs through a pattern of racketeering activities."

Based on the above analysis, I find that, under the allegations of the second superceding indictment, the purpose element of the VICAR conspiracy charge is, in law, insufficiently differentiated from the "overall objective" element in the RICO conspiracy charge to pretermit Gardner's double jeopardy challenge. The Government's reliance on the facial differences between those elements does not satisfy its burden to refute Gardner's claim of multiplicity.

### 2.

The Government also argues that a material element of the RICO conspiracy charge in Count 1 of the second superceding indictment is different from the elements of the VICAR conspiracy charges alleged in Counts 7 and 9 because the RICO conspiracy charge lists 12 distinct racketeering acts.[9] The VICAR conspiracy charges, in combination, include only three of those racketeering acts: (1) the state law conspiracy to murder Darryl Wyche (Count 7); (2) the state law conspiracy to murder Anthony Wyche (Count 7); and (3) the state law conspiracy to murder Darius Spence (Count 9). The Government argues, then, that because the charged RICO conspiracy requires proof of the commission of only two of the 12 alleged predicate acts (and none necessarily committed by Gardner himself), it would be possible for Gardner to be found guilty under Count 1 without having conspired to commit any of the murders mentioned in Count 7 or Count 9. Alternatively, the Government argues, Gardner may be proven guilty of Count 9 and acquitted of Count 1 because proof that he joined a conspiracy to kill Darius Spence (Count 9), is not necessarily concomitant proof of the Count 1 requirement that he agreed that a co-conspirator would commit at least two acts of racketeering activity.[10] *See Sali-*

9. Under the Government's peculiar arithmetic, 12 racketeering acts become only nine racketeering acts because the Government has sub-divided three of its listed "racketeering acts" into sub-paragraphs "(a)" and "(b)." The specific acts listed in Count 1 are: (1)(a) the murder of Oliver McCaffity and 1(b) conspiracy to murder Oliver McCaffity; (2) the murder of Lisa Brown; (3)(a) the murder of Darryl Wyche and 3(b) conspiracy to murder Darryl Wyche; (4)(a) the murder of Anthony Wyche and 4(b) conspiracy to murder Anthony Wyche; (5) the armed robbery of Darryl and Anthony Wyche; (6) the murder of Tanya Jones–Spence; (7) the armed robbery of Tanya Jones–Spence; (8) conspiracy to murder Darius Spence; and (9) drug trafficking.

10. This argument is particularly difficult to make with regard to Count 7 because that count contains conspiracy to murder both Wyche brothers. In Count 1, however, the Government lists conspiracy to murder Dar- ryl Wyche (racketeering act 3(b)) separate from conspiracy to murder Anthony Wyche (racketeering act 4(b)). Thus, if Gardner conspired to murder the Wyche brothers (in violation of § 1959(a)), he conspired to commit two racketeering acts. It is also conceivable that the same argument could be made with regard to the Spence murder conspiracy charged in Count 9 because the Government, in racketeering act eight, arguably lists two racketeering acts, to wit: (1) conspiracy to "feloniously, willfully, and of deliberately premeditated malice aforethought kill and murder Darius Spence," and (2) conspiracy to "murder Darius Spence in the perpetration of robbery [i.e., conspiracy to commit felony murder]." (Of course, it is far from clear whether the Government can properly allege a "conspiracy" to commit "felony murder." *See, e.g., Butler v. State,* 91 Md.App. 515, 523, 605 A.2d 186, 189 (1992)("The murderous *mens rea* under [the theory of felony murder based on armed robbery] does not entail any

*nas,* 522 U.S. at 65, 118 S.Ct. 469 (elaborating the requirements of a RICO conspiracy). If the Government's argument were accepted, Counts 1 and 9 would not be multiplicitous.

The Government here is relying on abstract formalism that fails to take genuine account of the interests at stake; I find this approach to be unpersuasive. Essentially, the Government is arguing that there are three conspiracies. First, there is a state law conspiracy to commit murder. That conspiracy then becomes a predicate act of racketeering essential to show the second conspiracy—the RICO charge described in Count 1. However, the federal conspiracy is formally distinguished from the underlying state law conspiracy because: (1) no overt act is required; (2) proof of an "enterprise" is required; and (3) proof of an ostensible individualized purpose is required. Then, there is a third conspiracy, Count 9, conspiracy to murder under federal law. This conspiracy can be formally distinguished from the underlying state law conspiracy, again, because: (1) no overt act is required; (2) proof of an "enterprise" is required; and (3) proof of an ostensible individualized purpose is required. The third conspiracy is likewise distinguished from the other federal conspiracy for the reasons discussed and rejected above.

In so arguing, the Government is trying to have its cake and eat too much of it. On one hand, the Government is using the RICO conspiracy charge to broaden the scope of offenses for which Gardner can be held criminally responsible—by lumping them together into one catch-all offense. On the other hand, in an attempt to pile more charges on the defendant, the Government then peels individual predicate offenses from the § 1962(d) RICO conspiracy charge, embellishes them with the expansive "purpose" element set out in § 1959(a), and then insists that the charges are sufficiently discrete to constitute separate offenses amenable to cumulative punishments. Prosecutorial "piling on" is certainly permissible, but only when the load is comprised of separate criminal offenses for which Congress has authorized separate punishments. That standard is not satisfied here.

If the argument put forth by the Government were accepted, it would be possible for the Government to charge a defendant like Gardner with a countless number of conspiracies related to a single RICO enterprise and a single "pattern of racketeering activity" in the absence of a clear

intent to kill at all but only the intent to perpetuate the underlying felony."), *aff'd,* 335 Md. 238, 643 A.2d 389 (1994)(alteration in original); *Evanchyk v. Stewart,* 202 Ariz. 476, 481, 47 P.3d 1114, 1119 (2002) ("Under Arizona law, a defendant may not be convicted of conspiracy to commit first-degree murder when that conviction is based only on the commission of felony murder .... Under Arizona law, a defendant may not be convicted of conspiracy to commit first-degree murder if he had merely the requisite intent to commit the underlying felony."); *State v. Wilson,* 30 Kan.App.2d 498, 43 P.3d 851, 853–54 (2002)("Our conspiracy statute requires a specific intent .... Felony murder does not require a specific intent .... Accordingly, Kansas does not recognize the crime of conspiracy to commit felony murder. One cannot intentionally conspire to commit a crime which only requires a *mens rea* of negligence or no *mens rea* at all.") (citations omitted); *State v. Gibbs,* 335 N.C. 1, 52, 436 S.E.2d 321, 350 (1993)(Observing that the jury was properly instructed "that to find a conspiracy to commit murder, they must first find an agreement to commit *first-degree murder*"), *cert. denied,* 512 U.S. 1246, 114 S.Ct. 2767, 129 L.Ed.2d 881 (1994); *State v. Banks,* 2004 WL 1686868, *10 (Tenn.Crim.App., July 28, 2004)("This court has held that 'conspiracy to commit felony murder' ... is not an offense in Tennessee.")).

expression of Congressional intent that it be allowed to do so. Under this flawed logic, the Government would be able to choose as many RICO predicates as it wished to include in a RICO conspiracy count and then, in subsequent counts, group them into numerous sub-conspiracies under VICAR, with each count containing sufficiently unique "elements" so that a VICAR count could be proven without duplicating proof of the "elements" of another VICAR sub-conspiracy.

Indeed, in the case at bar, the Government's argument would permit it to have included a *third* VICAR conspiracy charge against Gardner based on the alleged conspiracy to commit an armed robbery of the Wyche brothers, (racketeering act five listed in Count 1).[11] This would be possible even though it is clear that the conspiracy (1) to rob, and (2) to murder, the Wyche brothers, was a single state-law conspiracy and, if transmogrified into a federal-law conspiracy, is still but a single conspiracy.[12] The result must be the same in respect to the VICAR conspiracy charges the Government *did include* in the indictment because, as interpreted by Fourth Circuit precedent, the elements of the two conspiracy charges "necessarily overlap," *Johnson,* 219 F.3d at 359, in light of the allegations of the second superceding indictment.

At bottom, what the Government tries to do here (with the "cover" of two distinct federal statutes) is analogous to what the Supreme Court prohibited the Government from doing in *Braverman v. United States,* 317 U.S. 49, 53–54, 63 S.Ct. 99, 87 L.Ed. 23 (1942), under a single statute. In that case, the Government charged the defendants with a single conspiracy to violate several different provisions of the Internal Revenue laws. *Id.* at 50, 63 S.Ct. 99. Then, in the indictment, the Government charged the defendants with seven different conspiracy counts, one for each section of the code that was allegedly violated. *Id.* In reversing the conviction, the Supreme Court stated: "Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one." *Id.* at 53, 63 S.Ct. 99. Thus, a larger conspiracy listing multiple crimes, and the prosecutorial flexibility it inherently offers, should not be viewed as an inexhaustible opportunity to clone conspiracy charges in an indictment.

### 3.

A third possible distinction between the RICO and VICAR conspiracies is the

---

**11.** That is to say, although VICAR (unlike RICO) does not enumerate generic state law crimes of *armed robbery* or *robbery with a dangerous weapon* (or conspiracy to commit such offenses) as predicate offenses, *see supra* n. 3, "assault with a dangerous weapon" (as well as conspiracy to commit such offenses) is included. *See id.,* 18 U.S.C. § 1959(a)(3), (6). Thus, under the Government's theory of its charging prerogatives, the Government could have extracted the lesser included offense of "conspiracy to commit an assault with a dangerous weapon" from the greater charge of "conspiracy to commit an armed robbery of the Wyche brothers" (racketeering act five

listed in Count 1), if it had chosen to do so. *Cf. Harling v. United States,* 460 A.2d 571, 574 (D.C.1983) ("Assault with a dangerous weapon is a lesser included offense of armed robbery."); *accord Frye v. United States,* 2005 WL 2665432 (D.C., Oct.14, 2005); *contra State v. Baker,* 452 So.2d 927, 928 (Fla.1984).

**12.** Discovery disclosed by the Government so far makes it clear that the Government's theory of the case is that the Wyche brothers were lured to an ostensible drug transaction *for the dual purpose of robbing them and killing them.*

RICO conspiracy requirement that the defendant be aware one of his co-conspirators would commit at least two racketeering acts. Because this element is absent from the face of both statutes, it escapes the scrutiny of *Blockburger*. In any event, in light of the allegations in the second superceding indictment in the instant case, to rest decision on such a distinction is nonsensical. *See also supra* note 10 (dismissing this argument on other grounds). If Gardner conspired with one or more members of the "Mitchell Organization" to commit the VICAR offenses, he surely would have known that his co-conspirator would commit more than one racketeering act, e.g., conspiracy to murder each of the Wyche brothers and conspiracy to commit an armed robbery of the Wyche brothers (racketeering acts 3(b), 4(b), and five). Even though Counts 7 and 9 of the second superceding indictment do not name Gardner's co-conspirators for those particular sub-conspiracies, the Government necessarily asserts that at least one VICAR co-conspirator other than Gardner is a member of the "Mitchell Organization," otherwise the Government could not have listed that particular murder (or the conspiracy to commit that murder) as a racketeering act encompassed by the broader RICO conspiracy.

### D.

Having found that the VICAR conspiracies and the RICO conspiracy, as alleged in the second superceding indictment, are not "separate offenses" under *Blockburger*, I continue my analysis to determine Congressional intent through analysis of the legislative history of the statutes in question. *Albernaz*, 450 U.S. at 336–42, 101 S.Ct. 1137.

The RICO statute was added to the federal criminal code in 1970. The VICAR statute was added in 1984 to expand federal jurisdiction over murders involving interstate commerce. Obviously, the VICAR statute was written in consideration of the RICO statute because it refers to the RICO statute to borrow the definition of "racketeering activity." 18 U.S.C. § 1959(b)(1); *Concepcion*, 983 F.2d at 380. However, despite this overlap, it appears that Congress did not intend to prescribe two punishments for the same murder conspiracy under both statutes. There appears to be no reference in the legislative history to contradict this. Rather, it is apparent that it was Congress' intent not to allow cumulative punishments for § 1962(d) and § 1952(a)(5) based on the fact that Congress did not include VICAR conspiracy as a predicate offense under the RICO statute.

Although RICO was enacted first, by 14 years, it was amended in 1988 to include new predicate measures that came into effect after its inception. Section 1958 of Title 18, which proscribes the use of interstate commerce in the commission of murders-for-hire, was enacted at the same time as § 1959. In fact, § 1959 was envisioned as a companion statute to § 1958. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 306 (1983) (explaining that murders-for-hire "are sometimes not performed for money or other direct pecuniary benefit, but rather [as] an aspect of membership in a criminal organization"). Yet, in the 1988 amendments to the RICO statute, Congress chose to add § 1958, but not § 1959, to the list of racketeering acts cognizable in a RICO prosecution. *See* 18 U.S.C. § 1961(1). The fact that § 1959 was omitted speaks for itself.

### E.

Here, the Double Jeopardy Clause commands that the Government must make up its mind. Either Gardner joined (and may be punished for joining) an all-encompass-

ing conspiracy to conduct or participate in a pattern of racketeering in the conduct of the affairs of the "Mitchell Organization," or he joined a more limited conspiracy to commit the murders mentioned in Counts 7 and 9. But he may not, consistent with the Double Jeopardy Clause, be charged and punished more than once with joining the same conspiracy. Accordingly, I reject the Government's argument that Counts 7 and 9 are not multiplicitous with Count 1 because there are different criminal offenses enumerated in each count, and because the RICO conspiracy requires that the conspiracy extend to only two of 12 acts of racketeering.

Assuming the Government would choose to drop Counts 7 and 9 rather than Count 1, *see supra* note 1, Counts 7 and 9 shall be dismissed for being multiplicitous. The defendant's motion claiming multiplicity is, accordingly, granted.

### III.

 In addition to moving to dismiss Counts 7 and 9, the attorneys for Shawn Gardner have moved to withdraw from their representation of the defendant. For purposes of this motion, Gardner's lawyers have adopted the Motion for Leave to Withdraw that was filed by the attorneys of defendant Shelley Wayne Martin. The Motion for Leave to Withdraw is based on three provisions in the Maryland Rules of Professional Conduct: (1) Rule 1.16(a)(3) (requiring counsel to withdraw once discharged); (2) Rule 1.1 (requiring counsel to prepare as reasonably necessary for representation); and (3) Rule 1.4 (requiring counsel to communicate with and advise the client so he can make informed decisions). While the court empathizes with the difficult position in which counsel

find themselves, the facts giving rise to this motion are insufficient to justify leave to withdraw.

 A motion to withdraw (or to substitute counsel) presents a matter for the exercise of discretion by the trial court. *United States v. Gallop,* 838 F.2d 105, 107 (4th Cir.1988). The court should consider the following three factors when presented with such a motion: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint about counsel; and (3) whether the conflict between attorney and client amounts to a "total lack of communication." *United States v. Mullen,* 32 F.3d 891, 895 (4th Cir.1994). A court may deny a motion to withdraw when the conflict is caused by the defendant's own unwarranted behavior. *United States v. Corporan–Cuevas,* 35 F.3d 953, 956 (4th Cir.1994).

I find that, under the standards outlined above, withdrawal is not merited. Even though Gardner, in recent hearings, has unequivocally stated that he now "fires" [13] his lawyers, he previously cooperated with them and, by all accounts, had a good working relationship with them. Moreover, it is apparent that Gardner's lawyers have so far provided excellent representation.

This "problem" between lawyers and client clearly arises from Gardner's bizarre refusal to recognize the jurisdiction of the court. *See United States v. Mitchell,* 405 F.Supp.2d 602 (D.Md.2005) (explaining and rejecting the defendants' spurious jurisdictional arguments). Moreover, it is clear that Gardner's "problems" with his attorneys have nothing to do with their preparation or their performance in this case. Rather, Gardner has told the court that he

---

**13.** It should be noted that Gardner, after stating in court that he fired his lawyers, did not ask to proceed pro se.

wants to discharge them because they took an oath when they were admitted to the Bar to uphold the Constitution, and because they would not sign a certain "contract" he sent them.

These assertions by Gardner are frivolous in the extreme. I will not allow these antics to sabotage these proceedings or to denigrate from the dignity the court intends to ensure they embrace. Even though counsel are reasonably concerned with the need to comply with the Maryland Rules of Professional Conduct, and even though they certainly have a difficult task in working with their obstreperous client, I find that it is in the best interest of justice (and Gardner) that they continue their representation of Gardner. The Motion for Leave to Withdraw shall be denied.

IV.

For the reasons described above, the motion to dismiss Counts 7 and 9 shall be granted; the motion for leave to withdraw shall be denied.

It is SO ORDERED.