Filed 6/26/15  P. v. Miller CA5
Received for posting 6/30/15

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ORLANDO LEON MILLER,<br><br>Defendant and Appellant. | F067409<br><br>(Super. Ct. No. BF144095A)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Gary T. Friedman, Colette M. Humphrey, and H.A. Staley,[†] Judges.

Patricia L. Watkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

[*]Before Poochigian, Acting P.J., Detjen, J. and Smith, J.

[†]Retired Judge of the Kern Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Defendant Orlando Leon Miller represented himself and was convicted by jury trial of failing to register his new address within five days of moving (Pen. Code, § 290.013, subd. (a)).[1]  The trial court dismissed his prior strike conviction, denied probation, and sentenced him to the low term of 16 months in prison.  On appeal, defendant contends the trial court erred in granting his *Faretta*[2] motion to represent himself because the court failed to adequately advise him of the dangers of self-representation and thus he did not knowingly and intelligently waive his right to counsel.  We disagree and affirm.

## PROCEDURAL BACKGROUND

### *First* **Faretta** *Motion*

On January 8, 2013, at the beginning of the preliminary hearing before Judge Friedman, defendant informed the court that he wished to represent himself.  The courtroom was cleared of everyone except defendant and defense counsel.  Defendant first asked the judge to state on the record that he had taken an oath to perform his official duties and that he was adhering to his oath.  The judge answered that he did take an oath to serve as a judge and he was adhering to his oath at all times.  Defendant then read to the court:

> "It says I appear before this Court sui juris, as a flesh and blood living, breathing, sovereign American citizen on the land, which in claiming all my inherent, unlimited and unalienable constitutionally guaranteed rights, and with my name lawfully and properly spelled only in upper and lower case letters.  [¶] … [¶] I hereby move for immediate dismissal with prejudice because the charges brought against me as a citizen are fraudulent, bogus and without substance."[3]

The court told defendant the preliminary hearing would allow the court to determine if there was probable cause for him to stand trial.  If there was not, the charge

---

[1]All statutory references are to the Penal Code.

[2]*Faretta v. California* (1974) 422 U.S. 806 (*Faretta*).

[3]The complaint against defendant filed on September 19, 2012, was typed entirely in all capital letters (including defendant's name), as was the information filed on January 9, 2013.

would be dismissed. Defendant asked the court to bear with him because it was his first time representing himself. The court told him they had all the time in the world and asked if he had anything else to address. At this point, the following occurred:

"THE DEFENDANT: I'd like to motion—make a Faretta motion.

"THE COURT: All right. What do you understand a Faretta motion to be?

"THE DEFENDANT: I comprehend, as per [defense counsel], that it is a request to represent myself.

"THE COURT: Okay. Now, you've had the public defender appointed to represent you. Are you aware of the dangers and risks of representing yourself?

"THE DEFENDANT: I believe that I am the most knowledgeable on my case.

"THE COURT: Okay.

"THE DEFENDANT: And in establishing who I am, I believe that offering my affidavit of status will establish who I am and establish that there's no jurisdiction for this case to go forward.

"THE COURT: All right. Let's talk about this. [¶] You say this is your first time in a criminal court?

"THE DEFENDANT: Yes, sir—well, my first time representing myself, or even speaking up for myself or exercising my constitutional rights, sir.

"THE COURT: Sure. Okay. [¶] Do you understand that you can have an attorney represent you even if you can't afford one? One would be provided free of charge, such as you're receiving representation by [defense counsel] and her fine office.

"THE DEFENDANT: Yes, sir. [¶] … [¶]

"THE COURT: Okay. Let me go over some things with you. [¶] You've stated to the Court that you do not wish to be represented by an attorney, even though one would be provided for you at no expense. And if you cannot afford one, as we've told you, one will be provided. [¶] Now, you've indicated that even though you have one free of charge, you wish to represent yourself. Is that correct, sir?

3.

"THE DEFENDANT: Yes, sir, at this—at this time I believe that in consulting with my representative that I'm not being represented—represented as I would desire to be. She's giving me advice that I don't believe is adherent to my situation.

"THE COURT: You don't believe her advice is favorable to you, is that what you're saying?

"THE DEFENDANT: Absolutely.

"THE COURT: Now, if you make this decision to act as your own attorney, I want to caution you to see if you've considered and understand the following: [¶] First, it's almost always unwise to represent yourself, and in doing so you may conduct a defense which may aid or assist the prosecutor, the D.A., in convicting you of the charges. [¶] Have you considered that possibility?

"THE DEFENDANT: Yes, sir. I believe that after I present my affidavit that it will address all needed situations—

"THE COURT: Okay.

"THE DEFENDANT: —that will protect me.

"THE COURT: Now, you understand that you're not entitled, if you represent yourself, to any special treatment or privileges from the Court. The Court, the judge, myself, will require you to follow all the technical rules of law, procedure, and evidence in the defense of your case and in the presentation of your case. The Court is not permitted to aid you in your efforts to defend yourself…. [¶] Do you understand that?

"THE DEFENDANT: I comprehend, sir.

"THE COURT: Thirdly, the prosecutor will be an experienced professional attorney, just as your attorney is, who will not treat you leniently in any way even though, I should say, you do not have the same skills or experience as the prosecutor. In other words, in common language, she's not going to cut you any slack. [¶] Do you understand that?

"THE DEFENDANT: I comprehend, sir.

"THE COURT: She's there to do her job, and it will not likely be a fair contest since the prosecutor is going to have an advantage by reason of her skills, experience, and education. [¶] You, sir, will be responsible for your entire defense, including procuring or obtaining the attendance of any witnesses, asserting any legal or factual defenses. This may be the

4.

difference between acquittal and conviction in your case. [¶] Do you understand that?

"THE DEFENDANT:  I comprehend, sir.

"THE COURT:  Okay.  Fourth, if you are convicted, you may not legally complain of not having had an attorney to represent you in this matter.  [¶] Do you understand and comprehend that?

"THE DEFENDANT:  I comprehend, sir.

"THE COURT:  Okay.  Next, if you change your mind during the trial, you may not—you may not—be permitted to obtain a postponement of the case while you obtain an attorney.  [¶] Do you understand that or comprehend that?

"THE DEFENDANT:  I comprehend that, sir.  [¶] Question at this point, sir.

"THE COURT:  Go ahead, yes, sir.

"THE DEFENDANT:  As far as assistance to counsel, what are the limitations to assistance to counsel?

"THE COURT:  Assistance—you're either represented or you're not represented.  [¶] … [¶]

"THE DEFENDANT:  It is my belief that I have the constitutional right to have an assistance of a person who is not an attorney.

"THE COURT:  Okay.  Well, let's do a little research on that.  Give me a little time here.

"THE DEFENDANT:  I appreciate your patience, sir.

"THE COURT:  Sure.  That's what we're here for, sir.  [¶] … I think what you're inquiring about is appointment of an advisory or standby counsel.…  [¶] … [¶] A defendant who chooses to exercise his or her right to self-representation does not—does not—have a constitutional right to simultaneous—that means at the same time—self-representation and representation by counsel, whether labeled co-counsel, advisory counsel, or standby counsel.  [¶] … [¶] So this isn't a case that advisory or standby counsel should be appointed to.  However, … later during the case perhaps it might be something that a judge, if this case goes further—in other words, if we find probable cause to bind you over for trial on the felony offense, you may later on request the judge, he or she, to appoint you a

5.

standby counsel.  But I don't think—I don't think at this point it would be appropriate to do so.

"THE DEFENDANT:  Sir, can I clarify?  [¶] You said this is—this is the point where we determine whether we go forward.

"THE COURT:  Right.  We make a—sign an order binding the case over for felony trial.  [¶] You're here on the complaint.  You've already had your arraignment, so you're here to—and you had a pre-preliminary yesterday.  Is that correct?

"THE DEFENDANT:  Yes, sir.  I—

"THE COURT:  And you're here to determine if there's probable cause to bind you over, for the Court to issue a holding order that you be held to answer in a felony trial.

"THE DEFENDANT:  And I guess where my—my question is I haven't seen a warrant.  I haven't seen a complaint.  I don't know who has—

"THE COURT:  Do you want to see the complaint?

"THE DEFENDANT:  I'd like to know who has the claim against me.

"THE COURT:  Okay.  The State of California, sir, under the Penal Code, has a—

"THE DEFENDANT:  Under the Penal Code.

"THE COURT:  Yes.

"THE DEFENDANT:  Now, as addressed as to my status, as to who I am—

"THE COURT:  Yes, sir.

"THE DEFENDANT:  —I'm exercising my full constitutional right.

"THE COURT:  Absolutely.

"THE DEFENDANT:  Again, according to the United States Constitution and the Bill of Rights as ratified in 1791, I have no rights if I don't exercise my rights.  Am I not correct?

"THE COURT:  You are entitled to all of your constitution rights whether you ask that you be entitled to those or not, because I, under the

6.

law, am required to make sure that you, as a citizen of the United States, are treated equally. [¶] All citizens are entitled to, whether they want them or not, constitutional rights…. [¶] … [¶]

"THE DEFENDANT: Anything repugnant to the United States Constitution as ratified in 1791, which is the declared supreme law, is null and void. Is that not correct?

"THE COURT: If it's not foursquare with the Constitution it would be null and void.

"THE DEFENDANT: Okay. That's what—it is my comprehension that's what 'repugnant' means.

"THE COURT: Right.

"THE DEFENDANT: So in entering my affidavit of status, it will address that the complaint is not a valid complaint, and that it is—by it not being valid, it is not constitutional.

"THE COURT: Yes, sir. [¶] … [¶]

"THE DEFENDANT: Yes, sir. [¶] So is it appropriate at this time to read my affidavit into the public record?

"THE COURT: Sure. [¶] … [¶] Say we did … allow you to represent yourself, and we determined that you were maybe perhaps intentionally trying to be disruptive during the trial, trying to inappropriately delay the trial or do something to prevent the orderly progression of the case, we would have standby counsel there to take over should your pro per status be terminated. And if the standby counsel has to take over … the case, the court is not required to grant a continuance to allow standby counsel additional time to prepare. [¶] And then also we're required to warn you that seeking pro per status, if the pro per status is revoked, new counsel may be at a strategic disadvantage in presenting your case. [¶] So I want to make sure that you know the parameters of what you're asking. [¶] Go ahead. You wanted to read your affidavit into the record."

Defendant then read a lengthy affidavit in which he claimed he was a living, breathing human being and not an artificial person. He extensively claimed his God-given and constitutional rights. Finally, he noted his affidavit was signed and notarized.

The court thanked defendant, then returned to specific questions regarding defendant's understanding of his *Faretta* motion. Defendant stated that he understood

7.

the court's explanation of the following consequences: if he changed his mind during trial, he might not be permitted a continuance while he obtained an attorney; if the court revoked his self-representation, he might be excluded from the courtroom for misbehavior; if in custody, he would receive no more library privileges than other people representing themselves; if convicted, he could not legally complain of not having an attorney to represent him; if convicted, his punishment would be imprisonment for 16 months, two years, or three years, plus fines of up to several thousand dollars; and if the court found his prior strike conviction true and did not dismiss it, his punishment would be doubled to a maximum of six years.

The court explained to defendant: "Because in order to ascertain if you intelligently wish to waive and knowingly waive your right to be represented by an attorney, provided at no cost, we have to make sure that you understand all of the consequences, the downside, if you will." Defendant stated that he understood this.

The court gave defendant a copy of the complaint and the *Faretta* waiver form. Defendant told the court he had graduated from high school, completed one and one-half years of college, and served over six years in the Air Force. His primary language was English and he had never been treated for any emotional or mental illnesses. The court informed defendant he would need to respond to and initial each question on the written *Faretta* waiver form. The court told him to go over the form with his attorney and ask her any further questions he might have.

After a 15-minute break, the following occurred:

> "THE COURT: All right. The court's back in session. [¶] And Mr. Miller is present with his counsel …. [¶] Sir, have you had an opportunity to review the Faretta waiver form?
>
> "THE DEFENDANT: Yes, sir. [¶] Again, I would like to identify I'm not Mr. Miller. I am Orlando Miller, the living, breathing man, properly spelled upper and lower case. I am not the legal fiction. I am not the all cap man.

8.

"THE COURT: You're the same Mr. Miller that entered this courtroom for the preliminary hearing that we started a few minutes ago, right?

"THE DEFENDANT: I am Orlando Miller, the living, breathing man.

"THE COURT: You are the same gentleman, sir. [¶] Have you had a chance to review the Faretta waiver form?

"THE DEFENDANT: Yes, sir.

"THE COURT: And do you have any questions concerning the form?

"THE DEFENDANT: No, sir.

"THE COURT: Have you completed the form?

"THE DEFENDANT: No, sir.

"THE COURT: Do you wish to represent yourself or do you wish to continue at this point to be represented by your deputy public defender?

"THE DEFENDANT: I wish to continue.

"THE COURT: Continue what?

"THE DEFENDANT: To move forward with representation.

"THE COURT: By [defense counsel]?

"THE DEFENDANT: Yes.

"THE COURT: Is that correct?

"THE DEFENDANT: Yes.

"THE COURT: Okay. So you're not making a motion to represent yourself at this time.

"THE DEFENDANT: Right. Correct.

"THE COURT: Is that correct, counsel?

"[DEFENSE COUNSEL]: Yes, Your Honor. Upon further—

"THE COURT: Okay, counsel, thank you very much. Very well. [¶] So we bring the prosecutor in, please."

The court proceeded with the preliminary hearing.

*Second* **Faretta** *Motion*

At the readiness hearing before Judge Humphrey on March 1, 2013, the following occurred:

"[THE COURT:]  [Defendant] was offered a plea to count one, failure to register under [section] 290, with a strike prior, for low term, 32 months. [Defense counsel], it's my understanding [defendant] rejected that offer and has expressed an interest in representing himself; is that correct?

"[DEFENSE COUNSEL]:  Yes, your Honor.

"THE COURT:  [Defendant], it's my understanding you would like to act as your own attorney in this case; is that correct?

"THE DEFENDANT:  Yes.

"THE COURT:  I gave your attorney a form to have you fill out. [Defense counsel], you gave this to your client to fill out?

"[DEFENSE COUNSEL]:  Yes, your Honor, I read the form to him.

"THE COURT:  This indicates you do understand the dangers and pitfalls of representing yourself, and it is your desire to represent yourself, I do believe that you have that right.  So I am going to grant your Faretta motion, allow you to represent yourself in this case ….  [¶] … [¶] … Are you going to be prepared to proceed to trial March 11th, or do you need some more time to prepare?

"THE DEFENDANT:  I'd like a little more time.

"THE COURT:  Is that agreeable, [prosecutor]?

"[PROSECUTOR]:  Yes, your Honor.

"THE COURT:  I can put your trial on April 29th or I can put it on May 6th.

"THE DEFENDANT:  April 29th.

"THE COURT:  You have a right to a speedy jury trial; do you understand that right?

"THE DEFENDANT:  Yes, I do.

"THE COURT:  Do you give up that right and waive time for your trial till April 29th, plus twenty court days?

"THE DEFENDANT:  Yes, I do.

"THE COURT:  April 29th, nine o'clock, this courtroom for jury trial. You'll have another readiness hearing on April 19th, at 8:30.  You're ordered back on both of those dates."

The *Faretta* waiver form that defendant signed and initialed that day listed in his handwriting the charge against him, the maximum punishment, and each of the consequences that had been explained to him by the court on January 8, 2013.  Where the form stated, "Please explain briefly why you wish to represent yourself," defendant wrote, "subject matter jurisdiction and status."

### Readiness Hearing

At the readiness hearing on April 19, 2013, held before Judge Humphrey, defendant again refused a plea offer, and a trial date was set.

### Motions in Limine

On April 29, 2013, court convened before Judge Staley for commencement of trial.[4]  Defendant posed questions to the judge regarding his oath of office to defend the Constitution.  Defendant twice told the judge he was disqualified because he refused to answer all of defendant's questions and thus was operating as an imposter.  The court denied the disqualification motions as frivolous.  Defendant stated he was appearing as a flesh-and-blood living being, claiming all his constitutionally guaranteed rights with his name lawfully spelled only in upper and lower case letters.  Defendant objected to the judge's refusal to answer his question about the oath and the judge's refusal to allow him to present evidence to support his statement about his status.  The court noted the objections and told defendant to raise them on appeal.  Defendant asked who had raised a claim against him.  The court stated it was the district attorney for the State of California. Defendant said he was entitled to face his accuser.  Defendant asked whether his crime

---

[4]The remainder of the trial was conducted by Judge Staley.

11.

was defined as a crime by Black's Law Dictionary. The court responded that these were things a lawyer would understand and defendant did not appear to understand; the questions were not appropriate for the court to answer. Defendant continued: "My question is the prosecution does not jurisdiction [*sic*]. I'm challenging jurisdiction because I have not committed a crime. There is no evidence. There's no corpus delicti. There's no person here who has brought a claim against me." The court denied his objection, but defendant continued: "You may disagree, sir, but it states that I'm entitled to due process. The moment that due process has not been followed, jurisdiction is lost. The moment that I challenge jurisdiction is not up to me at that point to go any further. The prosecution has to prove they have jurisdiction on the record." The court explained that there was no jurisdictional issue to discuss at this stage of the proceedings. Defendant told the court: "Sir, if you're going to show bias as to ruling in the information or the evidence that I'm bringing forward, you're perjuring your oath, that is, if you have an oath." The court responded that defendant was getting close to contemptuous conduct, and it denied the disqualification motion again. Shortly thereafter, the court turned to a discussion of the prosecution's motions in limine.

After a recess, defendant said, "Judge, I would like to go back to what I addressed, the oath of office. And I would just like to place in the open record that I have the oath of office here. I have copies of your oath of office. I would like to hold you to your oath of office." The court said, "I'm not sure what that means but if you want to file something with the Court, hand it to the bailiff." Defendant's exhibit was marked. Defendant cited some cases, then explained that the judge's oath of office referred to defending defendant's constitutional rights. He said he was trying to establish who he was versus who the charges were against. The court declined to hear any further in limine motions and asked that the prospective jurors be brought into the courtroom.

***Trial***

On April 30, 2013, defendant told the court he was the grantor beneficiary of the trust and he asked to see the trustee. He asked to see the prosecutor's license to practice;

12.

a request the court denied. He asked if any of the court officials had a claim against him. When the court told him that no one would be answering that question, defendant said, "Judge, I demand that this case be dismissed with prejudice." Defendant started to leave the courtroom. The court told him he could not leave and would be taken into custody if he did. The bailiff followed defendant into the hallway. Defendant walked back into the courtroom accompanied by law enforcement officers. The court informed him his motion to dismiss was denied. Defendant said it was a demand, not a motion, because he was the grantor beneficiary of the trust. He said he did not voluntarily return to the courtroom; he was forced to come back in by law enforcement. He said he believed the proceedings were over. At this point, the court remanded defendant (who had been released on bail) into custody. Defendant accused the judge of acting outside his constitutional oath, committing treason, and losing jurisdiction.

That afternoon, the prosecution called its witnesses and defendant cross-examined them.

When the prosecution rested, defendant called and questioned two witnesses. Then defendant testified on his own behalf. He admitted failing to register, but claimed it was not a willful failure.

On May 1, 2013, defendant argued to the court that he was not the entity charged because he did not spell his name with all capital letters. He explained:

> "Well, from the very beginning of this trial, I have been distinctive about my identity in expressing that I am the living, breathing man sent here being on the land, proper spelling upper and lower case. I am not the legal fiction. It's as though that's being ignored. [¶] What I'd like to do or what I'd like to ask is to have the prosecution prove that I am the entity that they are prosecuting because every reference to the Orlando Leon Miller in this case that's in writing or in reference is in all capital letters. And from the very beginning, my distinction is that's not me. Anything that refers to me is only properly spelled in upper and lower case spelling."

He stressed that he was not the Orlando Leon Miller that is spelled with all capitals. He said names in all capitals were only corporations, not living beings, and he

13.

was therefore not the corporation listed in all capitals on his charging document.  The court ruled that this was a frivolous defense.

In his closing argument to the jury, defendant argued that he had never willingly or intentionally failed to register in his more than 20 years of registering.  He did miss once because he was taking care of his mother.

The jury found defendant guilty as charged.

*Sentencing*

At the sentencing hearing on May 31, 2013, the court gave defendant time to read the probation officer's report.  Then the following occurred:

> "THE COURT:  Are there any comments that you wanted to make regarding your sentencing?  I did read your document that you presented.  It did seem to have—at one point you were asking for a declaratory judgment.  You might want to explain exactly what that is.  It wasn't completely clear to me.  As I understand it, you were also asserting that there was no obligation to register as you had Fifth Amendment rights that would prohibit you from being compelled to provide that information. [¶] Anything else you want to address?

> "[DEFENDANT]:  Nothing other than the fact that I believe that my jurisdiction or that the jurisdiction of the court was never truly established.  According to the document that I provided, if jurisdiction is not proven on the record according to the laws pursuant to due process, that there is no authority to move forward.  If jurisdiction is never established, then the proceedings are null and void of law because there was never any true foundation established to move forward in the pursuit of accusing me or establishing that the act of not registering was truly even considered a crime.  And that according to criminal procedure, a crime is where there is a victim.  If there is no victim, there can be no case.  If there is no one who has a claim against me, I have no one that I'm facing.  If I'm guaranteed the right to face my accuser and never examine and an accuser never shows up, where is the justice in that?  I don't have anyone to defend myself against."

The court dismissed defendant's prior strike conviction and imposed the low term of 16 months.

## DISCUSSION

### *Law*

"A criminal defendant has a right, under the Sixth Amendment to the federal Constitution, to conduct his own defense, provided that he knowingly and intelligently waives his Sixth Amendment right to the assistance of counsel." (*People v. Blair* (2005) 36 Cal.4th 686, 708, overruled on another point in *People v. Black* (2014) 58 Cal.4th 912, 919.) "When 'a motion to proceed *pro se* is timely interposed, a trial court must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be. Furthermore, the defendant's "technical legal knowledge" is irrelevant to the court's assessment of the defendant's knowing exercise of the right to defend himself.'" (*People v. Dent* (2003) 30 Cal.4th 213, 217.) While most defendants would be better defended with counsel than without, "a criminal defendant's ability to represent himself has no bearing upon his competence to *choose* self-representation." (*Godinez v. Moran* (1993) 509 U.S. 389, 400.) Indeed, a "trial court may not determine a defendant's competency to waive counsel by evaluating his ability to present a defense." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1070.)

"A defendant seeking to represent himself 'should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." [Citation].' [Citation.] 'No particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation.' [Citation.]" (*People v. Blair*, *supra*, 36 Cal.4th at p. 708.) "The failure to give a particular set of advisements does not, of itself, show that a *Faretta* waiver was inadequate. Instead, '[t]he burden is on [the defendant] to demonstrate that he did not intelligently and knowingly waive his right to counsel.… [T]his burden is not satisfied by simply pointing out that certain advisements were not given.'" (*People v. Weber* (2013) 217 Cal.App.4th 1041, 1058-1059; see *People v. Koontz, supra*, 27 Cal.4th at p. 1071.) "Rather, 'the test is whether the record as a whole

15.

demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case.'" (*Blair*, *supra*, at p. 708.) We independently examine the entire record, not just the *Faretta* hearing record, to determine whether he intelligently and knowingly waived his right to counsel. (*People v. Burgener* (2009) 46 Cal.4th 231, 241.)

### *Lack of Oral Advisements*

Defendant contends that although he initialed and signed the *Faretta* waiver form on March 1, 2013, advising him of many disadvantages of self-representation, the written advisements were inadequate. He asserts the trial court acted in a perfunctory manner, failing to ask him questions, offer any oral advisements, or engage in any meaningful dialogue.

As defendant acknowledges, however, oral advisements regarding the dangers of self-representation are not required. The court in *Blair* explained:

> "The … in propria persona advisement form (sometimes referred to as a *Faretta* form) serves as 'a means by which the judge and the defendant seeking self-representation may have a meaningful dialogue concerning the dangers and responsibilities of self-representation.' [Citation.] The court might query the defendant orally about his responses on the form, to create a clear record of the defendant's knowing and voluntary waiver of counsel. [Citation.] The failure to do so, however, does not necessarily invalidate defendant's waiver, particularly when, as here, we have no indication that defendant failed to understand what he was reading and signing. To the contrary, defendant demonstrated his ability to read and write in numerous pro se filings before the court. Defendant also appeared to be of at least normal intelligence and spoke articulately in court. The last superior court judge who considered defendant's request for self-representation … found that defendant was 'in full control of his faculties' and was making 'a conscious choice.' We have no reason to question these findings." (*People v. Blair*, *supra*, 36 Cal.4th at p. 709.)

Here, defendant was an educated and articulate person who capably questioned witnesses and offered his own testimony. After reviewing the record, we have no reason to believe he did not understand the written advisements in the *Faretta* form he initialed and signed on March 1, 2013. Furthermore, although defendant does not mention it, he

received exhaustive and solicitous *oral* advisements on January 8, 2013, when he raised his first *Faretta* motion, as detailed above. We have considered the entire record, most definitely including the first *Faretta* hearing, and we conclude that defendant understood the dangers and disadvantages of self-representation and nevertheless knowingly and intelligently chose to waive his right to counsel. (*People v. Blair*, *supra*, 36 Cal.4th at p. 708.)

### *Lack of Particular Advisement*

Defendant argues his advisements critically omitted the advisement that he was giving up the right to raise ineffective assistance of counsel on appeal. (His *Faretta* form advised him, "If you are convicted, you may not legally complain of not having had an attorney represent you in this matter.") In his reply brief, he says both he and the People recognize that case law requires defendants to be advised that if they represent themselves, they cannot complain on appeal they were inadequately represented. This misrepresents both what the People say and what case law requires. The People say only that a defendant who elects to represent himself cannot later raise a claim of ineffective assistance of counsel on appeal (not that an advisement of that fact is required), and case law establishes that no particular advisements are required. (*People v. Blair*, *supra*, 36 Cal.4th at p. 708; *People v. Koontz*, *supra*, 27 Cal.4th at p. 1071.) Courts have recommended various advisements as a prophylactic measure, "to ensure a clear record of a knowing and voluntary waiver of counsel, not to create a threshold of competency to waive counsel." (*Koontz*, *supra*, at p. 1071.) "No particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation …." (*Id.* at p. 1070.) The absence of this particular advisement does not change the test, or our conclusion that the record as a whole demonstrates that defendant understood the disadvantages of representing himself, including the risks specific to his case, and chose to do so anyway.

17.

*Bizarre Behavior and Ill-conceived Defense*

Finally, defendant contends that the written advisements were inadequate in light of the red flags raised by his bizarre behavior—his statement on the *Faretta* form that his reason for wanting to represent himself was "subject matter jurisdiction and status," and his repeated statements that demonstrated his "erroneous and somewhat eccentric ideas regarding what constitutes a legal defense." He explains that his "misapprehension regarding a valid legal defense make[s] it abundantly clear that the court had a duty to inquire as to [his] opaque statement of why he wished to represent himself."

The essence of defendant's unusual defense theory—which he referred to as "subject matter jurisdiction and status"—was that he was not the entity charged in the complaint because an entity described in all capital letters does not refer to a flesh-and-blood living person, but another type of entity, such as a corporation. Because he was not the entity charged in the complaint, the complaint was invalid and unconstitutional, and the court had no jurisdiction to proceed against him on the complaint.

While this defense theory was bizarre and frivolous, it was not a theory of defendant's own making. Indeed, defendant was employing a known defense theory often referred to as the "flesh and blood" defense. "Although unique by conventional legal standards, the ['flesh and blood'] arguments are not new. Increasingly, they have been asserted in criminal cases …."[5] (*U.S. v. Mitchell* (D.Md. 2005) 405 F.Supp.2d 602, 604.)

In *Mitchell*, the defendants refused to "consent" to prosecution and asserted that the indictment "fail[ed] to properly represent them as 'flesh and blood' men" because their names were printed in capital letters. (*U.S. v. Mitchell*, *supra*, 405 F.Supp.2d. at p. 603.)[6] The court, which "clearly ha[d] jurisdiction over the defendants and [their]

---

[5]These theories have been relied upon in civil cases as well. (See, e.g., Masterson, *"Sovereign Citizens": Fringe in the Courtroom* (Mar. 2011) 30-2 American Bankruptcy Institute J. 1.)

[6]The court noted that "the use of capital letters in the caption of an indictment is irrelevant to the issue of subject matter jurisdiction. The government attorneys and the court

criminal charges," rejected these "[b]izarre and misguided contentions," and warned the defendants to stop their disruptive behavior.**7** (*Mitchell*, at pp. 605, 606.)

*The "Flesh and Blood" Defense* (2012) 53 Wm. & Mary L.Rev. 1361 explains:

"[In *Mitchell*,] Judge Andre Davis, ruling on various pro se motions in the case, reflected that the nonsensical claims Mr. Mitchell and his codefendants raised 'would even be humorous—were the stakes not so high.' After summarily rejecting the defendants' arguments as 'patently without merit,' Judge Davis explored the origins of their 'in-court tirades and irrational written objections based on "jurisdiction."' Tracing these misguided arguments back through American history revealed connections to a colorful cast of 'religious zealots, gun nuts, tax protestors, and violent separatists … who believe that America was irrevocably broken when the 14th Amendment provided equal rights to former slaves.' Judge Davis found it 'truly ironic that four African-American defendants here apparently rely on an ideology derived from a famously discredited notion: the illegitimacy of the Fourteenth Amendment.'

"This phenomenon, known colloquially in some jurisdictions as the 'flesh and blood defense,' is the embodiment in federal criminal cases of a movement sometimes referred to as the 'sovereign citizen' or 'anti-government movement. Commentators trace this movement back to the 'Posse Comitatus,' a loosely organized group of right-wing extremists most active in the 1970s and '80s. Only pro se defendants advance this 'defense' because no competent attorney would attempt to defend a criminal prosecution on such grounds. Indeed, the flesh and blood defense is legally frivolous—'in a court's eyes, it is as if the proponent had advanced no argument at all.' The flesh and blood defense is made possible by the Supreme Court's recognition of a fundamental right to self-representation in criminal trials in Faretta v. California. The Court, even in first recognizing this right, however, acknowledged the danger inherent in self-representation—namely that pro se defendants may work 'ultimately to [their] own detriment.' There is no doubt that defendants who invoke the

---

have addressed the defendants, both in court and on paper, in a proper manner that clearly identifies them. 'It makes no sense to rest a jurisdictional distinction upon the use of all upper case letters or a mixture of upper and lower case letters. The federal courts abandoned this level of formalism long ago.'" (*U.S. v. Mitchell*, *supra*, 405 F.Supp.2d. at p. 604.)

**7**Courts sometimes deny self-representation to defendants who attempt to use this bizarre strategy because of its obstructionist and delay tactics. (E.g., *United States v. Mosley* (8th Cir. 2010) 607 F.3d 555, 557, 559 [district court properly denied self-representation right of defendant who refused to answer questions at competency hearing and asserted he was a "flesh and blood breathing man[,] not a corporation"].)

flesh and blood defense are indeed working to their own detriment. [¶] … [¶]

"The argument that flesh and blood defendants present centers on a lack of personal jurisdiction, as the defendant asserts he or she is not a 'corporate citizen' but a 'live flesh and blood man,' a 'sovereign citizen.' Thus, flesh and blood defendants avoid making any suggestion that the court's jurisdiction is proper, which may start with a protest as simple as refusing to identify themselves for the record. Similarly, some defendants may refuse to acknowledge that they are the person named in the indictment, often because the indictment names the defendant in all capital letters, and flesh and blood theory instructs that the all-capital name represents the 'corporate citizen' named on one's Social Security card. These defendants may also refuse to sign documents or insist on appending their signatures with suffixes that symbolize their personal sovereignty. Indeed, some defendants may refute that they are the person named in the indictment because of the special suffixes they add to their names. Beyond mere refusal to identify themselves, flesh and blood defendants may refuse to enter a plea, to be cross-examined by the government, or to participate in the proceedings at all, wary of giving any indication that might imply the court has power over them. Other defendants … are fond of filibustering the court, launching into soliloquies on common law jurisdiction that are legal gibberish. [¶] … [¶] Transcending legal attacks on jurisdiction, subscribers to flesh and blood theory may make the judge, or the court generally, the target of both legal attacks and direct threats. For instance, by filing a lawsuit against the judge hearing their criminal cases, defendants may claim that the judge has a conflict of interest and cannot continue hearing the criminal matter. Other defendants may choose to skip lawsuits and attack the judge's impartiality through traditional means such as motions for recusal or disqualification. Others may focus simply on filing nuisance suits and property liens against judges and court personnel. More worrisome than these harassment tactics, however, are the defendants who make threats of violence that may constitute crimes in and of themselves. [¶] Finally, and most critically, no lawyer would advance the legally frivolous flesh and blood defense, a reality that leads flesh and blood defendants to fire their attorneys and proceed pro se. Though flesh and blood defendants may make demands for counsel of their choice, they insist on attorneys who will adopt their philosophy, which is impossible, or nonlawyers, which the court will not allow. Further, although indigent criminal defendants enjoy a fundamental right to appointed counsel, they are not entitled to counsel of their choice." (Note, *The "Flesh and Blood" Defense*, *supra*, 53 Wm. & Mary L.Rev. at pp. 1362-1374, fns. omitted.)

The court in *U.S. v. Benabe* (7th Cir. 2011) 654 F.3d 753 repeated its rejection of the flesh-and-blood defense and related frivolous theories:

> "Our intention is not to quash the presentation of creative legal arguments or novel legal theories asserted in good faith. But the arguments raised by these defendants were not in good faith. We have repeatedly rejected their theories of individual sovereignty, immunity from prosecution, and their ilk. See *United States v. Burke*, 425 F.3d 400, 408 (7th Cir. 2005); *United States v. Hilgeford*, 7 F.3d 1340, 1342 (7th Cir. 1993) (rejecting the 'shop worn' argument that a defendant is a sovereign and is beyond the jurisdiction bounds of the district court); *United States v. Sloan*, 939 F.2d 499, 500–01 (7th Cir. 1991); *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) (describing defendant's proposed 'sovereign citizen' defense as having 'no conceivable validity in American law'); *United States v. Phillips*, 326 Fed.Appx. 400 (7th Cir. 2009) (dismissing jurisdiction arguments as frivolous because federal courts have subject matter and personal jurisdiction over defendants brought before them on federal indictments alleging violations of federal law). Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented." (*U.S. v. Benabe*, *supra*, 654 F.3d at p. 767.)

As this discussion clarifies, defendant intentionally pursued a known defense strategy. His defense may have been erroneous and eccentric, but it was intentional and strategic, and it was defendant's stated reason for wanting to represent himself.[8] His pursuit of an ill-advised defense did not require the court to question or deny his self-representation. (See *Godinez v. Moran*, *supra*, 509 U.S. at p. 400; *People v. Koontz*, *supra*, 27 Cal.4th at p. 1070.)

In *People v. Weber*, *supra*, 217 Cal.App.4th 1041, the defendant raised a similar flesh-and-blood defense, then claimed on appeal that he had not been competent to represent himself. The appellate court explained:

> "The evidence at the competency hearing indicates that defendant's bizarre motions and objections were not the result of delusions but were intentional

---

[8]When this strategy did not put an end to the proceedings, defendant testified that his failure to register was not intentional.

efforts to thwart the proceedings.… [¶] … [¶] … Appellate counsel contends defendant's dignity was impugned and the trial became a 'spectacle' …. [¶] … [¶] Defendant's dignity was not impugned[;] it was honored by the order granting his *Faretta* request: 'Respect for the dignity and autonomy of the individual is a value universally celebrated in free societies and uniformly repressed in totalitarian and authoritarian societies. Out of fidelity to that value defendant's choice [to waive counsel] must be honored even if he opts foolishly to go to hell in a handbasket. At least, if the worst happens, he can descend to the netherworld with his head held high. It's called, "Doing It My Way."'" (*Id.* at pp. 1052-1055.)

*Conclusion*

After our review of the entire record, we conclude defendant "'understood the disadvantages of self-representation, including the risks and complexities of the particular case.'" (*People v. Blair*, *supra*, 36 Cal.4th at p. 708.) His waiver of the right to counsel was knowing and intelligent, despite his choice of defense. The trial court did not err in granting defendant's *Faretta* motion.

**DISPOSITION**

The judgment is affirmed.